IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN WOODRUFF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 20-946 |
| ANDREW SAUL, Commissioner | : | |
| of Social Security | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                          May 20, 2021

Steven Woodruff ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g)

to review the Commissioner's final decision denying in part his application for disability

insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons that

follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is

supported by substantial evidence.

# I.     PROCEDURAL HISTORY

Plaintiff applied for DIB on December 8, 2016, alleging disability beginning on

December 10, 2015. Tr. at 76, 164-65.[1] The application was denied initially, id. at 89-

93, and Plaintiff requested an administrative hearing before an ALJ, which took place on

October 9, 2018. Id. at 38-75. The ALJ issued an unfavorable decision on December 24,

2018. Id. at 21-30. The Appeals Council denied Plaintiff's request for review, id. at 1-5,

---

[1]To be entitled to DIB, a claimant must establish that he became disabled on or
before his date last insured. Plaintiff's date last insured at the time of his application was
December 31, 2019, see tr. at 181, but by the time of the December 24, 2018 ALJ
decision under review, Plaintiff had acquired sufficient coverage to remain insured
through June 30, 2020. Id. at 22.

1

making the ALJ's December 24, 2018 decision the final decision of the Commissioner for purposes of the present action.  20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on February 20, 2020.  Docs. 1 & 2.  The matter is now fully briefed and ripe for review.  Docs. 19, 20 & 26.[2]

## II.   <u>LEGAL STANDARD</u>

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.      Whether the claimant is currently engaged in substantially gainful activity;
>
> 2.      If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

---

[2]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  <u>See</u> Standing Order, In RE:  Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 4.

See Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

This court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

## III.   **DISCUSSION**

Plaintiff was born on November 13, 1964, and thus was fifty-one years of age at the time of his alleged disability onset date (December 10, 2015) and fifty-four years of age at the time of the ALJ's decision (December 24, 2018). Tr. at 164, 181. He is five feet, five inches tall and weighs approximately 170 pounds. Id. at 184. Plaintiff was previously married and has no children under the age of eighteen. Id. at 164-65. He resides alone in a house. Id. at 191. Plaintiff completed two years of college and has not

had any specialized job training.  Id. at 185.[3]  He has prior work experience as a sous chef, machinist, and wood machinist.  Id. at 42-46, 64, 185.

## A.      ALJ's Findings and Plaintiff's Claims

In the December 24, 2018 decision under review, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 10, 2015, his alleged onset date.  Tr. at 23.  At step two, the ALJ found that Plaintiff had the severe impairment of multiple sclerosis ("MS").  Id. at 24.[4]  The ALJ next found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a), with the following limitations: occasional postural activities, but never climb ladders; occasional pushing and pulling with the bilateral lower and upper extremities; occasional overhead reaching with the bilateral upper extremities; frequent gross, fine finger and feeling manipulative activities; and should avoid heat, humidity, fumes, dusts, gases, unprotected heights, and hazards.  Id.  The ALJ found that Plaintiff was not able to perform any past relevant work, id. at 28, and that considering his age, education, work experience, and RFC, there were jobs that existed in

---

[3]Plaintiff testified that he took some courses as part of his training to be a machinist.  Tr. at 46.

[4]MS is a disease in which there are foci of demyelination throughout the white matter of the central nervous system usually including weakness, incoordination, paresthesias, speech disturbance, and visual complaints.  Dorland's Illustrated Medical Dictionary (32nd ed. 2012) ("DIMD"), at 1680.

significant numbers in the national economy that Plaintiff could perform.  Id. at 28-29.

As a result, the ALJ concluded that Plaintiff was not disabled during the relevant period.

Id. at 29.

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence

because the ALJ did not give adequate reasons for rejecting the medical opinion evidence

of Plaintiff's treating neurologist and failed to provide a proper evaluation of Plaintiff's

subjective testimony, and in the alternative he requests remand pursuant to sentence six

of 42 U.S.C. §405(g) for consideration of evidence not submitted to the ALJ.  Docs. 19 &

26.  Defendant counters that the ALJ's opinion is supported by substantial evidence, and

that a sentence six remand is not warranted.  Doc. 20.

### B.  <u>Summary of the Medical Evidence</u>

Plaintiff initially alleged disability due to MS, tremors and numbness in his hands,

balance problems and unsteady gait, fatigue and lack of energy, and problems

concentrating and thinking.  Tr. at 184.  Plaintiff conceded at the administrative hearing

that MS is essentially the only medically determinable impairment at issue, calling it "by

far the major problem."  Id. at 39.  Therefore, the summary of the medical evidence will

be confined to MS and its associated symptomatology.

Plaintiff was diagnosed with MS in 2006, nine years prior to his alleged onset

date.  Tr. at 260, 267.[5]  The administrative record contains treatment notes from

---

[5]Plaintiff also has a history of being diagnosed with Ménière's disease, tr. at 260, which is a disorder of the inner ear that causes severe dizziness (vertigo), ringing in the ear (tinnitus), and can cause hearing loss.  See https://www.nidcd.nih.gov (last visited April 26, 2021).  Plaintiff reported that he was diagnosed in 2005 based on episodes of

neurologist Amy Pruitt, M.D., of Penn Medicine, beginning in May 2014. Id. at 284-88. At that time, Dr. Pruitt noted that Plaintiff had constant hand numbness with tingling that does not cause pain, and anal and genital numbness that extended into the leg. Id. at 287. Plaintiff reported that he had just completed a course to become a machinist. Id. He also reported headaches and muscle-aches from his longtime MS medication, Avonex,[6] but that he did not wish to change the medication. Id.

Plaintiff returned to Dr. Pruitt six months later, in November 2014. Tr. at 280-83. Plaintiff reported having a new job and the doctor noted that Plaintiff exhibited a "brighter mood" and was "clinically doing well." Id. at 283. Despite balance complaints, he exhibited a negative Romberg test.[7] Id. When Plaintiff returned to Dr. Pruitt in May 2015, he reported some bilateral arm tingling with "no real loss of dexterity in the hand." Id. at 278. The doctor noted that Plaintiff was a hunter who made his own bows and shot targets, and that he was "doing quite well." Id.

The administrative record also contains treatment notes from Plaintiff's primary care physician, Jack C. Rosenfeld, M.D. Tr. at 289-337. At an annual health examination performed on May 7, 2015, Plaintiff exhibited normal motor strength and intact sensation, and had a non-focal and normal neurological examination. Id. at 324.

---

vertigo and vomiting, which improved after an ear perfusion procedure. Tr. at 260. As of April 2017, his Ménière's symptoms were stable. Id. at 343.

[6]Avonex (interferon) is used to treat relapsing MS in adults. See https://www.drugs.com/avonex (last visited Apr. 26, 2021).

[7]Romberg sign is swaying of the body or falling when standing with the feet close together and the eyes closed, indicative of a neurological problem. DIMD at 1715.

He denied experiencing, among other things, an abnormal gait, loss of strength, loss of use of extremity, tingling/numbness, and tremor.  Id. at 325.  His only assessment was MS, for which he had been referred to Dr. Pruitt.  Id.  Dr. Rosenfeld documented similar examination findings and denial of symptoms on November 20, 2015, id. at 322, 323, at which time the doctor assessed Plaintiff with hypertension, generalized anxiety disorder, nontoxic unimodular goiter, MS, and hyperlipidemia.  Id. at 322.  Subsequent follow-ups with Dr. Rosenfeld yielded the same normal findings.  Id. at 320-21 (Dec. 27, 2015), 318 (Apr. 4, 2016), 315-16 (May 9, 2016).  During a follow-up on November 10, 2016, Dr. Rosenfeld noted Plaintiff's report of feeling stressed, found that his blood pressure was slightly elevated, and found that his other conditions were stable.  Tr. at 313-14.

On December 19, 2016, Plaintiff began treating with neurologist David Tabby, D.O.  Tr. at 260-62.  Upon examination, Plaintiff exhibited 4.5/5 strength, bilateral hand tremor, symmetric shoulder shrug, normal muscle bulk, mild increase in muscle tone, reduced leg proprioception, temperature, and vibration, an unsteady Romberg test, clumsy rapid alternating movements, and a cautious and wide based gait.  Id. at 261.  Dr. Tabby assessed Plaintiff with MS, with evidence of recent progression.  Id.  The doctor switched Plaintiff's medication to Tecfidera[8] based on Plaintiff's report that Avonex was no longer effective, id. at 260, and the doctor ordered a brain MRI.  Id. at 261.

---

[8]Tecfidera (dimethyl fumarate) is used to treat relapsing forms of MS in adults.  See https://www.drugs.com/tecfidera (last visited Apr. 26, 2021).

The January 13, 2017 MRI was consistent with Plaintiff's history of MS, with no associated enhancement or restricted diffusion to indicate active lesions.  Tr. at 268, 349. An examination of Plaintiff performed by Dr. Tabby during a follow-up visit in February 2017, yielded similar results to the previous month.  Id. at 268.  The doctor switched Plaintiff's medication to Aubagio[9] due to reported side effects.  Id.

In February 2017, state agency physician Leo P. Potera, M.D., completed an RFC assessment as part of the initial disability determination.  Tr. at 80-82.  Dr. Potera opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours and sit for six hours in an eight-hour day; had unlimited ability to push/pull (except for limitations on lifting/carrying); could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme heat, humidity, fumes, odors, gases, dusts, poor ventilation, and hazards.  Id. at 81-82. Dr. Potera further opined that Plaintiff had no manipulative, visual, or communicative limitations.  Id. at 81.

Plaintiff continued to treat with Dr. Tabby approximately once every six months from April 2017 to October 2018.  Tr. at 338-58.  During the 2017 visits, Dr. Tabby noted Plaintiff's hand tremor, wide gait and positive Romberg's sign, opined that he did

---

[9]Aubagio (teriflunomide) is used to treat relapsing forms of MS in adults.  See https://www.drugs.com/aubagio (last visited Apr. 26, 2021).

not have symptoms suggestive of exacerbations, and continued him on Aubagio. <u>Id.</u> at 343-44 (Apr. 24, 2017), 340 (Oct. 24, 2017).

Plaintiff returned to primary care physician Dr. Rosenfeld in May 2017. <u>Tr.</u> at 292-94, 298-99. Plaintiff had a normal spine examination, no gross abnormalities in the musculoskeletal system, a non-focal neurological examination, normal motor strength, and intact sensation. <u>Id.</u> at 294, 298-99. As with prior visits, Plaintiff denied gait abnormality, loss of strength, loss of use of his extremities, tingling/numbness, and tremor. <u>Id.</u> at 300. Dr. Rosenfeld opined that Plaintiff was "[o]verall doing well." <u>Id.</u> at 298.

On his return to Dr. Tabby on April 24, 2018, Plaintiff reported longstanding tingling and numbness in both hands and numbness and heaviness in both thighs, and stated that although he can still walk normally, he lost his balance about two months previously while carrying a box. <u>Tr.</u> at 338. He also complained of fatigue, with some relief from modafinil. <u>Id.</u>[10] Upon examination, Plaintiff exhibited a minimal hand tremor, normal muscle bulk, a mild increase in muscle tone, reduced leg proprioception, temperature and vibration, and unsteady Romberg. <u>Id.</u> at 339. A follow-up appointment with Dr. Tabby on October 24, 2018, revealed similar findings. <u>Id.</u> at 395-96.

In June and July 2018, Plaintiff also treated with cardiologist Denzell Pollock, M.D., on referral from Dr. Rosenfeld. <u>Tr.</u> at 329-37. Plaintiff reported that he "notices

---

[10]Modafinil (teriflunomide) is a medication that promotes wakefulness. <u>See</u> https://www.drugs.com/modafinil (last visited Apr. 26, 2021).

some numbness and tingling sensation and fatigue when walking." Id. at 336. Dr. Pollock noted that Plaintiff was taking Aubagio, which seemed to have "maintained his MS well." Id. On physical examination, Plaintiff ambulated with a normal gait and exhibited normal strength and tone. Id. at 337. Plaintiff underwent an EKG with results "within normal limits," id., and a treadmill stress test that showed "a reasonably good exercise capacity." Id. at 329.

On July 16, 2018, Plaintiff returned to Dr. Rosenfeld, his primary care physician. Tr. at 289-91. Plaintiff appeared well developed and in no acute distress, id. at 289, and he again denied gait abnormality, loss of strength, loss of use of his extremities, tingling/numbness, and tremor. Id. at 291.

On October 24, 2018, Dr. Tabby noted Plaintiff's complaints of hand and thigh numbness and heaviness, fatigue, and loss of balance when walking. Tr. at 395. Upon examination, Plaintiff exhibited reduced cervical and lumbar range of motion, symmetrical shoulder shrug, slightly reduce muscle strength of 4.5/5, reduced leg proprioception, temperature, and vibration, positive Romberg sign, clumsy rapid alternating movement, and a cautious and wide-based gait. Id. at 395-96. The doctor's assessments were MS and possible cervical radiculopathy. Id. at 396.

### C.    Other Evidence

At the October 9, 2018 administrative hearing, Plaintiff testified that he cannot work due to symptoms associated with MS. He discussed his prior work as a sous chef, which required him to remain on his feet all day and lift up to twenty pounds, tr. at 41-43, and which he left because of dizziness attributed to Ménière's disease. Id. at 44. He had

a procedure that helped with the Ménière's disease but he was subsequently told that the dizziness was part of the onset of, or related to, MS. Id. He next worked in a wood shop that required him to be standing on his feet for most of the day. Id. at 45-46. He started at forty hours per week but had to cut back to twenty-seven hours, id. at 47, and he stopped working due to fatigue and failing to meet his quotas, in part because the job required intricate placement of small parts into machines. Id. at 47-48.

Plaintiff testified that he walks slowly and with a wide gait for balance, but he does not use a cane or assistive device. Tr. at 52-53. He has episodes of numbness in his neck and stated that it last occurred approximately six months prior to the hearing. Id. at 55. Plaintiff explained that his original MS medication, Avonex, stopped working, and that he switched to Tecfidera and then to Aubagio due to side-effects. Id. at 51-52. He also stopped taking modafinil for fatigue, stating that it really did not help, id. at 56, and that fatigue causes him to lie down for a few hours per day. Id. at 57. Plaintiff testified that when he changed his MS medications, his overall symptoms did not improve but the exacerbations lessened. Id. at 55. He also explained that symptoms are worse in summer when the weather is hot. Id. at 56. As for hand tremors, Plaintiff explained that they worsen as he uses his hands or arms for such things as a fork or phone, and that it gets worse if he is holding something while also keeping his arm in the air. Id. at 57-58. He stated that the problems he identified in a Function Report, which he completed

approximately one month before he began treating with Dr. Tabby, are still present "[f]or the most part." Id. at 58-59.[11]

A VE also testified at Plaintiff's October 5, 2017 administrative hearing. Tr. at 63-71. The VE testified that Plaintiff's past relevant work as a sous chef, machinist and wood machinist are skilled and medium-exertional work, and all were performed as light. Id. at 64. The ALJ asked the VE to consider whether jobs existed for a person of Plaintiff's age, education, and work experience who could perform light work, with occasional postural activities and no climbing of ladders, occasional pushing and pulling with the lower and upper bilateral extremities, occasional overhead reaching, frequent gross, fine-finger and feeling manipulation, and who must avoid heat, humidity, dust, gas, unprotected heights and hazards. Id. at 64-65. The VE testified that such a person could not perform Plaintiff's past relevant work but could perform jobs that existed in the national economy, including assembler of electrical accessories, assembler of plastic hospital equipment, and inspector, hand packager. Id. at 65-66. When the ALJ changed the hypothetical to a person who could perform no bilateral overhead reaching and only occasional bilateral upper extremity gross, fine-finger, and feeling manipulation, the VE testified that the individual could not perform the identified jobs, but could perform work

---

[11]In the Function Report, tr. at 191-98, Plaintiff described having daily severe headaches, balance problems, an unsteady gait, syncope that contributes to falls, extremity numbness, hand tremors, and fatigue that requires him to lie down during the day. Id. at 191, 192. He can take care of his personal needs, although it takes longer. Id. at 192. His activities include preparing simple meals (often frozen meals), light chores, driving, and shopping, and he gets cooking and cleaning help from friends and family. Id. at 193-94. He enjoys reading and watching sports on television, limited by headaches. Id. at 195.

as a laminating machine off-bearer, bakery worker on a conveyor belt, and usher.  Id. at

66-67.  In response to questions from counsel, the VE testified that a limitation to only

occasional use of the hands for grasping, fingering, and feeling would reduce the

occupational base for light work by 95 to 98 percent and for sedentary work by 98 or 99

percent, id. at 70-71, and that if the individual required two hours of rest per eight-hour

workday, there would be no work that the individual could perform.  Id. at 71.

### D.    Consideration of Plaintiff's Claims

#### 1.    Consideration of Medical Opinion Evidence

Plaintiff first claims that the ALJ erred by giving little weight to the opinion of

Plaintiff's treating neurologist, Dr. Tabby.  Doc. 19 at 3-13; Doc. 26 at 2-4.  Defendant

counters that the ALJ's consideration of the medical opinion evidence is supported by

substantial evidence, and that Plaintiff is asking the court to impermissibly reweigh the

evidence.  Doc. 20 at 8-16.

A treating physician's opinion is entitled to controlling weight when it "is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20

C.F.R. § 404.1527(c)(2).[12]  A treating physician's opinion is entitled to be given greater

weight than that of a physician who conducted a one-time examination of the claimant as

---

[12]Effective March 27, 2017, the Social Security Administration amended the rules regarding the evaluation of medical evidence, eliminating the assignment of weight to any medical opinion.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because Plaintiff's application was filed prior to the effective date of the new regulations, the opinion-weighing paradigm is applicable.

a consultant.  See, e.g., Adorno v. Shalala, 40 F.3d 43, 47-48 (3d. Cir. 1994) (citing

Mason v. Shalala, 994 F.2d 1058, 1067 (3d. Cir. 1993)).  When there is a conflict in the

evidence, the ALJ may choose which evidence to credit and which evidence not to credit,

so long as she does not "reject evidence for no reason or for the wrong reason."

Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Plummer v. Apfel, 196 F.3d

422, 429 (3d Cir. 1991); see also 20 C.F.R. § 404.1527(c)(4) ("Generally, the more

consistent an opinion is with the record as a whole, the more weight we will give to that

opinion.").  When a treating physician's opinion is not accorded controlling weight, the

ALJ should consider a number of factors in determining how much weight to give it; the

examining relationship (more weight accorded to an examining source), the treatment

relationship (including length and nature of the treatment relationship), supportability,

consistency, specialization, and other factors.  20 C.F.R. § 404.1527(c)(1)-(6).

Here, the entirety of Dr. Tabby's opinion regarding Plaintiff's functional

limitations consists of the following: "Mr. Woodruff . . . was diagnosed with [MS] in

2006.  He suffers from tremor and poor balance.  He has fatigue.  He has functional

limitation standing and walking."  Tr. at 260 (Jan. 9, 2017).  The ALJ stated the

following regarding Dr. Tabby's assessment:

> The undersigned gives little weight to the 2017 opinion of Dr.
> David Tabby, DO, who opined that [Plaintiff] had [MS] and
> suffered from tremor and poor balance.  He had fatigue and
> functional limitations to standing and walking.  The
> undersigned notes that objective evidence of tremor,
> numbness, clumsy movements, and weakness and fatigue
> from [MS] support [Plaintiff's] need for lesser exertional
> limitations.  However, this opinion is of little probative value,

14

as Dr. Tabby did not offer specific, function-by-function limitations, in vocationally relevant terms.

Id. at 27 (record citations omitted).

I find that the ALJ's consideration of Dr. Tabby's generalized statement of Plaintiff's limitations is supported by substantial evidence. First, it is supported by the objective evidence of record summarized by the ALJ, which includes minimal and conservative treatment history and mostly benign physical examination findings. For example, Plaintiff's neurologists treated his MS with medications that were adjusted based on Plaintiff's reports of their efficacy and side-effects, with no suggestion that they be increased or that Plaintiff undergo other therapeutics. Plaintiff did not utilize a cane or any ambulatory assistant devices and did not receive treatment for injuries caused by a fall during the relevant period. A brain MRI performed on January 13, 2017, was consistent with Plaintiff's history of MS, with "[n]o associated enhancement or restricted diffusion to indicate active lesions." Tr. at 268, 349. During visits with Dr. Tabby approximately every six months in 2017 and 2018, the doctor repeatedly noted Plaintiff's MS-related symptoms including hand tremor, cautious and wide gait, and positive Romberg's sign, while finding upon examination that Plaintiff exhibited minimal hand tremor, normal muscle bulk, and 4.5/5 muscle strength, without symptoms suggestive of exacerbations. See id at 343-44 (Apr. 24, 2017), 340-41 (Oct. 24, 2017), 338-39 (Apr. 24, 2018), 395-96 (Oct. 24, 2018). In the summer of 2018, cardiologist Dr. Pollock noted that Plaintiff's MS medication seemed to have "maintained his MS well," and found on physical examination that Plaintiff ambulated with a normal gait and exhibited normal

15

strength and tone.  Id. at 336-37.  He also underwent an EKG with results "within normal limits," id. at 337, and a treadmill stress test that showed "a reasonably good exercise capacity."  Id. at 329.  Throughout the relevant period, treatment notes from Plaintiff's primary care physician, Dr. Rosenfeld, repeatedly indicate that Plaintiff denied experiencing, among other things, an abnormal gait, loss of strength, loss of use of extremity, tingling/numbness, and tremor.  See, e.g., id. at 291, 300, 325.  Even if these notations are of limited relevance because Plaintiff obtained MS treatment from a neurologist, it is certainly noteworthy that Plaintiff's MS symptoms were not a chief complaint at his primary care visits.

Plaintiff argues that the ALJ improperly discounted Dr. Tabby's opinion based on the ALJ's finding that Plaintiff received only conservative treatment.  Doc. 19 at 9-10 & n.5.  However, the ALJ did not discount Dr. Tabby's opinion because Plaintiff received only conservative treatment, but rather for the absence of a vocationally relevant function-by-function analysis.  See tr. at 27.  In any event, an ALJ is permitted to consider a claimant's treatment history when evaluating the medical opinion evidence.  See Myers v. Comm'r of Soc. Sec., 684 F. App'x 186, 192 (3d Cir. 2017) (ALJ appropriately discounted treating physician's opinion, in part based on conservative treatment).

Plaintiff also argues that the ALJ improperly rejected Dr. Tabby's opinion on the grounds that the doctor failed to provide a function-by-function analysis.  See Doc. 19 at 4 & n.1; Doc. 26 at 4.  Given that Dr. Tabby offered an extremely general opinion that lacked an explanation in vocational terms, the ALJ's approach is understandable and

supported by both controlling regulations and case law.  See 20 C.F.R. § 404.1527(c)(3)

("The better an explanation a source provides for a medical opinion, the more weight we

will give that medical opinion."); Daddario v. Berryhill, Civ. No. 17-2176, 2018 WL

1937577, at *2 (E.D. Pa. Apr. 24, 2018) (affirming where the ALJ discounted the treating

physician's opinion in part because it did "not provide function by function limitations");

Nixon v. Comm'r of Soc. Sec., No. 18-1631, 2019 WL 4748058, at *2, n.1 (W.D. Pa.

Sept. 30, 2019) (same).[13]

Plaintiff argues the ALJ failed to discuss all of Dr. Tabby's notes, as well as other

parts of the record.  Doc. 19 at 5-6.  As an initial matter, I note that the ALJ explicitly

discussed several of the findings that Plaintiff claims the ALJ overlooked, including Dr.

Tabby's treatment notes from December 2016, February 2017, and April 2018, and

Plaintiff's January 2017 brain MRI.  Tr. at 26.  To the extent the ALJ failed to expressly

cite certain other treatment notes submitted by Dr. Tabby, as my prior summary of the

medical evidence shows, the treatment notes, assessments, and examination findings

were largely duplicative.  In any event, an ALJ is not required to cite to every piece of

record evidence.  See Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("A

---

[13]Plaintiff's reliance on two older cases, Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989) and Kane v. Heckler, 776 F.2d 1130, 1335 (3d Cir. 1985), is misplaced.  In Allen, the physician limited the claimant to lifting only ten pounds, which is a vocationally relevant limitation.  881 F.2d at 41.  In Kane, the treating physician opined that the claimant could perform light work, and the Court remanded based on the ALJ's reliance on a consultative examiner who did not express a view on how the claimant's musculoskeletal impairments affected his ability to perform that work.  776 F.2d at 1134-35.  Here, it cannot be said that Dr. Tabby's extremely generalized statement expresses a vocationally relevant limitation.

written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") (citations omitted).

Plaintiff also argues that the ALJ erred by using treatment records of Dr. Pollock, a cardiologist, in discounting the opinion of Dr. Tabby, a neurologist. Doc. 19 at 6-7. I disagree. First, as noted above, the ALJ considered Dr. Pollock's treatment notes among other aspects of the record. Tr. at 27. Although Dr. Pollock is a cardiologist, he discussed Plaintiff's history of MS, including Plaintiff's statements that he notices some numbness, tingling, and fatigue when walking, and that his medication appears to maintain his MS well. Id. at 337. Dr. Pollock also examined Plaintiff, providing objective evidence of tremor, numbness, clumsy movement, weakness, and fatigue, along with a normal gait, normal strength, and tone. Id. Thus, the ALJ's consideration of this evidence was proper.

I also reject Plaintiff's final argument that the ALJ erred in discounting Dr. Tabby's opinion because she substituted her own lay impressions and failed to rely on contrary medical opinion evidence. Doc. 19 at 8-9. First, the applicable regulations explicitly reserve RFC determinations to the ALJ. See 20 C.F.R. §§ 404.1546(c) (the ALJ "is responsible for assessing your [RFC]"); 404.1546(d)(2) ("Although we consider opinions from medical sources on issues such as . . . , your [RFC] . . ., the final responsibility for deciding these issues is reserved to the Commissioner"). Additionally, in assessing Plaintiff's RFC, the ALJ gave some weight to the opinion of state agency

physician Dr. Potera, finding that the doctor's limitation to light work was consistent with the objective evidence, that his postural limitations accounted for Plaintiff's complaints of fatigue and balance issues, and that his environmental limitations accounted for Plaintiff's testimony that conditions such as heat exacerbated his symptoms. Tr. at 27. Importantly, the ALJ found that the evidence warranted limitations beyond those contained in Dr. Potera's report, and to that extent discounted Dr. Potera's opinion. Id. For example, the ALJ limited Plaintiff to occasional overhead reaching bilaterally, occasional pushing/pulling with the upper extremities, and frequent (but not constant) gross, fine finger, and feeling manipulative activities, based on Plaintiff's testimony regarding bilateral hand numbness, as well as objective record evidence of Plaintiff's hand tingling and tremors with numbness. Id. The ALJ also noted that due to Plaintiff's reduced leg proprioception, Plaintiff should be limited to only occasional pushing and pulling with the lower extremities. Id.

For all of the foregoing reasons, I conclude that the ALJ's consideration of Dr. Tabby's opinions is supported by substantial evidence.

2.    Consideration of Plaintiff's Subjective Complaints

Plaintiff next claims that the ALJ improperly evaluated Plaintiff's subjective complaints. Doc. 19 at 13-21; Doc. 26 at 5-6. Defendant counters that the ALJ's consideration of Plaintiff's subjective complaints is supported by substantial evidence. Doc. 20 at 16-25.[14]

_____

[14] Plaintiff's claim is based on Social Security Ruling 16-3p, which superseded Ruling 96-7p, which had the same title, by eliminating the term "credibility" from the

Social Security Regulations require a two-step evaluation of subjective symptoms: (1) a determination as to whether there is objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and (2) an evaluation of the intensity and persistence of the pain or symptoms and the extent to which it affects the individual's ability to work. 20 C.F.R. § 404.1529(b). Third Circuit case law does not require an ALJ to accept a plaintiff's complaints concerning his symptoms, but rather requires that they be considered. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). An ALJ may disregard subjective complaints when contrary evidence exists in the record, see Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993), but must explain why she rejects such complaints with references to the medical record. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d. Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence.").

The ALJ reviewed Plaintiff's testimony and summarized the medical evidence, and then stated:

> [Plaintiff's] testimony that he is unable to sustain work activity is inconsistent with his self-reported daily activities, including independently managing his personal care and grooming, preparing simple meals, completing light chores, driving a car, and shopping in stores. Although [Plaintiff] testified to problems with feeling small objects, he testified

Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (March 16, 2016) ("SSR 16-3p"). SSR 16-3p applies to all decisions on or after March 28, 2016. Id. 2017 WL 5180304, at *1, 13 n.27 (Oct. 25, 2017) (republishing SSR 16-3p for purposes of establishing applicability date of March 28, 2016).

> that he can handle most everyday objects, such as cups and
> utensils. He testified that he walks with a cautious gait, but
> he has not required an assistive device for ambulation.
> Throughout the relevant period, [Plaintiff] conservatively
> managed [MS] with medication, and medical providers did
> not recommend more aggressive interventions. In fact, in
> 2017, [Plaintiff's] physician noted that [Plaintiff] was doing
> well, as he regularly presented as well developed and in no
> acute distress. On physical examination, [Plaintiff]
> ambulated normally, albeit cautiously, and he displayed intact
> motor strength and sensations in all extremities. Overall,
> [Plaintiff's] minimal and conservative treatment history does
> not support the alleged severity of his allegations.

Tr. at 26-27 (record citations omitted). Thus, contrary to Plaintiff's assertion that the

ALJ provided only a "boilerplate statement" in evaluating Plaintiff's complaints, Doc. 19

at 13-14, the ALJ in fact discounted Plaintiff's subjective complaints because they were

not entirely consistent with his self-reported activities, his testimony, his course of

treatment, and the objective medical evidence.

The ALJ's review of Plaintiff's testimony and subjective statements included

acknowledgement of his fatigue, numbness, dexterity issues such as difficulty working

with small objects and dropping items, hand tremors that worsen with increased use, and

problems balancing and walking, and that his baseline symptoms continue even though

medication alleviates exacerbations and increases the length of time between

exacerbations. Tr. at 25-26. The ALJ found Plaintiff's testimony that he was unable to

sustain work inconsistent with his own reported daily activities, including a Function

Report indicating that he can prepare simple meals, perform light chores, drive and go

shopping, and his testimony indicating that he can handle most everyday objects and did

not require an assistive device to ambulate. Id. at 26-27. The ALJ also found Plaintiff's

subjective complaints to be inconsistent with his conservative treatment history and other objective medical evidence.  Id. at 27.

Plaintiff argues that his lengthy work history, including the three jobs constituting his past relevant work for purposes of this action, should have been considered by the ALJ.  Doc. 19 at 20-21.  Although the Third Circuit has held that a substantial work history should be considered in assessing a claimant's credibility with respect to testimony of subjective pain and an inability to perform work, see Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979), work history "'is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints.'"  Sanborn v. Colvin, Civ. No. 13-224, 2014 WL 3900878, at *16 (E.D. Pa. Aug. 11, 2014) (quoting Thompson v. Astrue, Civ. No. 09-519, 2010 WL 3661630 (W.D. Pa. Sept. 20, 2010), aff'd, 613 F.App'x 171 (3d Cir. 2015).[15]  "'[A] claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility.'"  Id. (quoting Thompson, 2010 WL 3661530, at *4).  Indeed, "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2016 WL 1119029, at *1.

In Sanborn, the Third Circuit concluded that the ALJ's failure to consider the claimant's substantial work history did not require remand because the ALJ explained her reasoning, including that the plaintiff's testimony was not supported by the medical

---

[15]In Dobrowolsky, the claimant had a twenty-nine year history of continuous work, including fifteen years with the same employer.  606 F.2d at 409.  Here, although Plaintiff has worked for most of the past thirty-five years, he had no earnings in 2000 or 2013, and he had six different employers in the last fifteen years.  Tr. at 174-75, 200.

record or other evidence that he had a more active lifestyle. 613 F. App'x at 177. The same is true here, given the nature of the medical evidence and Plaintiff's own reported daily activities, both of which the ALJ summarized and relied upon. See, e.g., Burton v. Saul, Civ. No. 19-2508, 2020 WL 3447752, at *14 (E.D. Pa. June 24, 2020) (declining to remand for further evaluation of claimant's work history); Salazar v. Colvin, Civ. No. 12-6170, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24, 2014) ("The fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony to the extent of her limitations.").

For these reasons, I conclude that ALJ's consideration of Plaintiff's subjective complaints is supported by substantial evidence.

### 3. Plaintiff's Request for Sentence Six Remand

Lastly, Plaintiff requests in the alternative that the case be remanded pursuant to sentences six of 42 U.S.C. § 405(g) for review of additional evidence not submitted to the ALJ. Doc. 19 at 21-24; Doc. 26 at 6-8. Plaintiff argues that because he was awarded benefits in a subsequent application beginning the day after the ALJ's decision in this case, there must be new and material evidence to support his disability during the period relevant to the case currently under review. Defendant counters that remand pursuant to sentence six is not warranted. Doc. 20 at 25-29.

In the Third Circuit, evidence not before the ALJ cannot be used to seek a remand under sentence four of 42 U.S.C. § 405(g) on the ground that the ALJ's decision was not supported by substantial evidence. Matthews v. Apfel, 239 F.3d 589, 591-93 (3d Cir. 2001); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991). Instead, evidence submitted

for the first time to the District Court is relevant to a request for a remand under sentence six of 42 U.S.C. § 405(g), which requires the claimant to show that the additional "evidence is new and material and . . . there was good cause why it was not previously presented to the ALJ." Matthews, 239 F.3d at 593.

To be "new," the evidence must not have been "in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). To be "material," the evidence must be "relevant and probative," meaning that it creates a reasonable probability that it would have changed the ALJ's decision had it been presented. Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Lastly, a claimant must demonstrate "good cause" for his failure to acquire and present post-hearing evidence to the ALJ in a timely manner. Szubak, 745 F.2d at 834; Jones, 954 F.2d at 128. Claimants bear the burden of showing that the three requirements are satisfied. 42 U.S.C. § 405(g) (sentence six).

Here, Plaintiff fails to satisfy each of these three elements. First, he concedes that he "cannot point to the specific evidence that should be reviewed by the agency under Sentence 6 although that evidence must, almost without question, exist and be in the Social Security's possession." Doc. 19 at 23. Thus, Plaintiff identified no "new" evidence.

Second, to the extent Plaintiff argues that the subsequent award of benefits somehow constitutes new evidence, a subsequent favorable determination is not "material" because it does not relate to the relevant period at issue in this case. See, e.g.,

Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 120 (3d Cir. 2012) (subsequent finding of disability, even one day later, does not warrant remand of a prior unfavorable decision); Jackson v. Astrue, 402 F. App'x 717, 718 (3d Cir. 2010) ("Standing alone, the fact that the Commissioner subsequently found claimant to be disabled does not warrant remand or reversal in the absence of new and material evidence, which claimant here has failed to provide.").

Third, because Plaintiff cannot identify the evidence that he claims is new and material, it follows that he cannot establish that good cause exists for his failure to present any such evidence to the ALJ.

For these reasons, remand pursuant to sentence six of 42 U.S.C. § 405(g) is not warranted.[16]

## IV.   **CONCLUSION**

The decision of the ALJ is supported by substantial evidence because the ALJ properly considered the medical opinion evidence and Plaintiff's subjective complaints. Also, Plaintiff's subsequent award of benefits for the period after the ALJ's adjudication in this case does not warrant remand pursuant to sentence six of 42 U.S.C. § 405(g).

An appropriate Order follows.

---

[16]Plaintiff's reliance on SSR 18-01p, see Doc. 19 at 23-24, is misplaced. See SSR 18-01p, "Titles II and XIV: Determining the Established Onset Date (EOD) in Disability Claims," 2018 WL 4945639. This Ruling does not support a sentence-six remand. Rather, the Ruling expressly states that "we will not consider whether the claimant first met the statutory definition of disability on a date that is beyond the period under consideration." Id. at *6. Because Plaintiff's subsequent application dealt with a later time period, the period at issue in this case is "beyond the period under consideration" in the subsequent application.